UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANTHONY J. VOLK,**                                  Chapter 7
    Debtor                                          Case No. 16-10592-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Trustee's Objection to Amended Schedule C filed by Anthony J. Volk (the "Debtor") on March 23, 2017 through which he claimed an exemption in a Guardian Life Insurance Policy with a value in the amount of $23,527.27 pursuant to Mass. Gen. Laws ch. 175, § 125. The Court heard the matter on April 28, 2017, and the parties agreed to file an Agreed Statement of Facts and briefs with respect to the issue presented.

The material facts necessary to resolve the Trustee's Objection are not in dispute and neither party requested an evidentiary hearing. The Court now makes the following findings of fact and rulings of law pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052. The legal issue presented is whether the value of the whole life insurance policy, referred to in the Objection as the "Second Guardian

1

Policy" and identified on the Debtor's schedules as "Guardian Life $23,527.27," can be claimed by the Debtor as exempt pursuant to Mass. Gen. Laws c. 175, § 125.

**II. FACTS**

Following the April 28, 2017 hearing, the parties submitted an Agreed Statement of Facts which the Court now paraphrases.

The Debtor filed a Chapter 7 petition on February 24, 2016. The Trustee was appointed Chapter 7 trustee on February 25, 2016. The Debtor is the owner of a whole life insurance policy issued in 2001 by The Guardian Life Insurance Company of America, namely the Second Guardian Policy. The Debtor scheduled the Second Guardian Policy in his bankruptcy schedules as having a cash surrender value of $23,527.27. The original and only beneficiary of the Second Guardian Policy was and remains The Volk Family Revocable Trust u/d/t dated November 11, 1993 (the "Trust"). The grantors of the Trust were the Debtor and his deceased spouse, Patricia M. Volk. Deborah A. Volk and Kari M. Volk, identified in the Trust, are the daughters of the Debtor. Deborah A. Volk also is known as Debra A. Volk-Beaulieu. Warren A. Volk, identified in the Trust, is the son of the Debtor. Ian E. Anderson, also identified in the Trust, is the son of Patricia M. Volk and the stepson of the Debtor.

On or about December 9, 1993, the Debtor and Patricia M. Volk executed the First Amendment to the Trust. On March 13, 1995, Patricia M. Volk died. On or about October 13, 2004, the Debtor executed a Second Amendment to the Trust.[1]

---

[1] The Court notes that the Trust set forth specific provisions relating to the "Marital Share" of the Trust property, a "Children's Share" of the Trust property relating to the

2

The Debtor initially claimed the Second Guardian Policy as exempt in its entirety pursuant to Mass. Gen. Laws c. 175, § 119A. He subsequently filed an amended Schedule C on March 23, 2107, claiming the Second Guardian Policy as exempt in its entirety pursuant to, and only pursuant to, Mass. Gen. Laws c. 175, § 125. The Trustee timely filed the Objection to the Debtor's claimed exemption in the Second Guardian Policy.

**III. POSITIONS OF THE PARTIES**

A. The Trustee

The Trustee references In re Chevalier, 330 B.R. 21 (Bankr. D. Mass. 2005), In re Sloss, 279 B.R. 6 (Bankr. D. Mass. 2002), and In re CRS Steam, Inc., 217 B.R. 365 (Bankr. D. Mass. 1998), in support of her argument that § 125 of ch. 175 requires that the beneficiary must "(1) have been the original beneficiary when the policy was "effected;" (2) be an entity other than the owner; and (3) have an insurable interest in the insured." *See* Chevalier, 330 B.R. at 25 (quoting Sloss, 279 B.R. at 14). In Chevalier, the court determined that "the mere designation of a probate estate as beneficiary disqualifies a policy from that statutory exemption." 330 B.R. at 25.

The Trustee further argues:

> The Trust has exactly the same qualities as the beneficiary of the Second Guardian Policy that were found wanting in Chevalier. . . . Critically, review of the declaration of trust shows that the Trust is a revocable trust, with its grantors, the Debtor and his late wife, retaining numerous rights, expressly including the power "to change the beneficiaries thereof," Article

---

Debtor's daughters, Deborah and Kari, and a "Family Share" of the Trust property. It appears that the Trust was amended the second time to specifically name Warren A. Volk as entitled to a Family Share. Although the distributions under the Trust might change owing to the specific identification of Warren A. Volk, there were no changes to the identity of the beneficiaries of Trust as a result of the second amendment.

3

> II, paragraph I, page 2. The Trust expressly provides (with an exception not relevant here) that after the death of one Grantor (here, the Debtor's wife), "the surviving Grantor shall continue to have the foregoing power with respect to all the trust property," Id. In fact, the Debtor as surviving Grantor did in 2004 change the beneficiaries of the Trust, executing a Second Amendment to Trust Agreement . . . The Second Amendment to Trust Agreement changed the way trust property was divided amongst trust beneficiaries, providing for three new and different treatments for the four trust beneficiaries as well as changing the age at which young beneficiaries would receive distributions from the Trust.
>
> The Debtor's power to change the beneficiaries of the Trust at any time makes the Trust just like the debtor's probate estate in Chevalier; just as a "simple alteration to his or her estate plan" could undermine the statute by retaining the exemption while changing the beneficiary of the life insurance policy, so too could a change of the beneficiaries of the Trust change the beneficiaries of the Second Guardian Policy. The fact that the Debtor still has this power over the beneficiaries of the Trust prevents the Trust from falling into the class of life insurance beneficiaries protected by § 125. The Debtor therefore cannot claim exemption in the Second Guardian Policy pursuant to § 125.

(footnote omitted).[2]

B. The Debtor

The Debtor argues that Mass. Gen. Laws ch. 175, § 125 protects the lawful beneficiary from claims of creditors of the insured. Citing In re Beach, 8 F.Supp. 910, 911-12 (D. Mass. 1934), and McCarthy v. Griffin, 299 Mass. 309, 310-11, 12 N.E.2d 836, 837 (1938), he argues that he did not change the beneficiary of the Second Guardian Policy. Acknowledging that there are limitations to the protections afforded by § 125 for premiums paid in fraud of creditors, the Debtor, citing CRS Steam, Inc., further argues

---

[2] The Court notes that the Trustee did not commence an adversary proceeding or specifically request a declaration that *all* Trust assets are property of the estate. *See, e.g.*, In re Cowles, 143 B.R. 5 (Bankr. D. Mass. 1992). Rather, the Trustee relies upon Mass. Gen. Laws ch. 175, § 125 and Chevalier in support of his Objection.

that the requirement that the beneficiary named in the policy have an insurable interest has been satisfied as the Trust beneficiaries are the Debtor's children and stepson.

In addition, the Debtor argues that the Trust was established in 1993 and there has been no change in beneficiaries, despite two amendments, one which clarified the name of the Debtor's second wife, and the other reflected the death of the Debtor's spouse and maintenance of the existing beneficiaries. The Debtor stated:

> Unlike a probate estate which can be avoided or changed in many fashions, the Trust beneficiaries of the Volk Family Revocable Trust have not changed and Mr. Volk as Trustee owes a fiduciary obligation to the beneficiaries. Section 125 applies only to policies in favor of another in the case cited by the Trustee. Judge Boroff [in Chevalier] indicated that the Debtor who designated his probate estate as beneficiary of the life insurance policy was in substance naming himself [sic] as beneficiary and not an entity other than the Debtor.

**IV. DISCUSSION**

A. Applicable Law

Although not specifically labeled an exemption statute, Mass. Gen. Laws ch. 175, § 125 provides significant protections for beneficiaries of life insurance policies from creditors of the insured. It provides:

> If a policy of life or endowment insurance is effected by any person on his own life or another life, *in favor of a person other than himself having an insurable interest therein*, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, *whether or not the right to change the named beneficiary is reserved by or permitted to such person*; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or on behalf of a

5

> creditor, of a claim to recover for certain premiums paid in fraud of creditors, with specification of the amount claimed. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.
>
> Any person to whom a policy of life or endowment insurance, issued subsequent to April eleventh, eighteen hundred and ninety-four, is made payable may maintain an action thereon in his own name.

Mass. Ann. Laws ch. 175, § 125 (emphasis supplied). Although there are a limited number of state court decisions interpreting Mass. Gen. Laws ch. 175, § 125, the Supreme Judicial Court in <u>Rosenberg v. Robbins</u>, 289 Mass. 402, 194 N.E. 291 (1935), addressed whether a creditor of the defendants, Robbins and Siegel, could reach and apply the beneficiaries' interest in life insurance policies to satisfy the defendants' obligations. The Supreme Judicial Court held that "[t]he provisions of G.L. c. 175, §§ 125, 126, as amended, prevent the plaintiff from reaching and applying to the payment of her note the cash surrender value of the policies." 289 Mass. at 406, 194 N.E. at 293. *See also* <u>In re Caron</u>, 305 B.R. 614, 616 (Bankr. D. Mass. 2004).

In <u>In re CRS Steam, Inc.</u>, 217 B.R. 365 (Bankr. D. Mass. 1998), the court considered whether the debtor, Thomas F. LeBlanc, whose case was jointly administered with that of CRS Steam, Inc., could exempt a whole life insurance policy issued by Prudential Life Insurance Company of America, where the debtor's schedules did not disclose either the policy's cash surrender value or its death beneficiaries and where the policy was payable at death to an intervivos trust whose beneficiaries were the debtor's surviving children, if any, and otherwise his nieces and nephews. When the debtor commenced his

6

bankruptcy case, he was unmarried and had no children, although he had several nieces and nephews. The court observed:

> [S]ection 125 refers to a policy "effected" by an insured in favor of a member of a specified class of beneficiaries, the Supreme Judicial Court of Massachusetts construes the statute to apply only if the beneficiary remains unchanged since the policy was first issued. *See* McCarthy v. Griffin, 299 Mass. 309, 311, 12 N.E.2d 836, 837 (1938); Bailey v. Wood, 202 Mass. 562, 574, 89 N.E. 149, (1909). There is no indication that the beneficiary of the Debtor' policy has changed since its issuance.
>
> There is nevertheless an obstacle which the Debtor fails to overcome. Section 125 grants exemption rights only for a policy taken out by a person "in favor of a person other than himself having an insurable interest therein. . . ." Mass. Ann. Laws ch. 175, § 125 (Law. Co-op. 1987). The present policy, through a trust, is "in favor" of the Debtor's children and, if no children survive him, in favor of the Debtor's nieces and nephews. The Debtor presently has no children. So his nieces and nephews would receive beneficial interests in the proceeds if he died now. The policy is therefore at present "in favor" of the nieces and nephews. By the weight of authority, a niece or nephew does not ordinarily have an insurable interest in the life of an uncle. John Allen Appleman and Jean Appleman, *Insurance Law and Practice* § 822; Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* § 43:9 (3d ed. 1996). There is an exception if a parental or pecuniary relationship exits [sic] between the parties. Id. The Debtor does not allege any such relationship. Nor has he sought to establish that the policy contains a choice-of-law clause designating the law of a state which is not in accord with the weight of authority. He has therefore failed to qualify the policy as exempt.

In re CRS Steam, Inc., 217 B.R. at 369.[3]  Thus, in CRS Steam, Judge Queenan did not confine his evaluation of whether there existed an "insurable interest" to the intervivos

---

[3] The United States Supreme Court considered the meaning of an insurable interest. It stated:

> It is well settled that a man has an insurable interest in his own life, and in that of his wife and children; a woman in the life of her husband; and the creditor in the life of his debtor. Indeed, it may be said generally that any reasonable expectation of pecuniary benefit or advantage from the

trust but looked to see if the existing beneficiaries had an insurable interest. He concluded that they did not, and, accordingly, the cash surrender value of the policy was not exempt.

In In re Sloss, 279 B.R. 6 (Bankr. D. Mass. 2002), the court, after examining the characteristics of whole life policies in contrast to term life policies,[4] determined the following with respect to two of three policies at issue:

---

> continued life of another creates an insurable interest in such life. And there is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend; or two or more persons, on their joint lives, for the benefit of the survivor or survivors. The old tontines were based substantially on this principle, and their validity has never been called in question.
>
> The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest.

Conn. Mut. Life Ins. Co. v. Schaefer, 94 U.S. 457, 460, 24 L. Ed. 251 (1876).

[4] Based upon the parties stipulated facts, the court explained:

The policies are whole life policies and as such contain a feature distinguishing such policies from term life policies, namely, guaranteed policy value benefits which accumulate during the insured's lifetime.3

> As is standard in whole life policies, the Guardian Policies' value provisions provide the owner with various financial "options." The worth of each option is calculated and directly correlated with the accumulated cash value of the policy. As the policy premiums are paid and dividends are added, the cash value of the policy increases. As the cash value increases, the owner is entitled to greater monetary benefits under the policy. For example, the owner of the policy is entitled to borrow a "policy loan" from Guardian in an amount based upon the cash value of the policy. The greater the cash value, the greater the amount that can be borrowed.

8

> As of the Petition Date, Paul Sloss had made no changes to the original beneficiary designations of the Guardian Policies. However, in July of 1992, in conjunction with their marital dissolution, Paul Sloss and Luzmila Sloss had entered into a binding Separation Agreement, pursuant to which Paul Sloss agreed to maintain the existing Guardian Policies on his life, naming Luzmila as trustee for their children, until the youngest reached the age of twenty-two. . . . Yet, Paul Sloss never actually notified Guardian as [to] those beneficiary designation changes. Thus, notwithstanding the terms of the Separation Agreement, Luzmila Sloss continues to be the beneficiary of record on both policies.

In re Sloss, 279 B.R. at 11. The court in Sloss began its analysis by observing that the § 125 exemption is subject to two caveats. Id. at 14. It stated:

> First, any policy premiums paid in fraud of creditors will not be protected by the exemption. *See, e.g.*, Mass. Gen. Laws ch. 175, § 125. *See also* Bailey v. Wood, 202 Mass. 562, 565, 89 N.E. 149, 150 (1909). Second, the protected

---

> The owner is also entitled to surrender each of the policies and receive its cash surrender value. The greater the premiums and dividends paid into the policy, the greater the cash surrender value. In the event of a surrender for cash, the insurance (and, accordingly, the death benefits to the beneficiaries) terminates. . . . After such a termination, the policy cannot be reinstated. . . . Unlike term life insurance in which all benefits accrue at the time of the insured's death, these policy value benefits are exercisable by the owner during the life of the policy until any of the follow occurs: the insured dies, the owner is changed, or the owner's rights are assigned. . . .
>
> The ability of the owner to exercise the lifetime benefits under the policy is independent of the death benefit rights held by the beneficiaries of the policy. Under both policies, the beneficiary (or concurrent beneficiaries if more than one beneficiary is named), is entitled to the death proceeds upon the death of the insured. . . . Contingent beneficiaries stand second in line to the beneficiary, and presumably their rights only vest, if at all, upon the death of the beneficiary. . . . The owner retains the right to *11 change the beneficiary or even assign ownership in the policy. However, an owner by assignment may not change the beneficiary of the policy. . . .

Sloss, 279 B.R. at 10 (footnotes omitted).

9

> beneficiary must be part of the class designated in the statute. Section 125 does not protect all beneficiaries; only those originally named at the time the policy was first "effected." McCarthy v. Griffin, 299 Mass. 309, 311, 12 N.E.2d 836, 837 (1938). . . .

Sloss, 279 B.R. at 14. The court added: "in order to be entitled to the statutory protection from an insured's creditors, a beneficiary of a policy must be a 'lawful beneficiary.' Mass. Gen. Laws ch. 175, § 125. One is characterized as a 'lawful beneficiary' if he or she has an insurable interest in the life of the insured. Mass. Gen. Laws ch. 175, § 125; McCarthy, 299 Mass. 309, 12 N.E.2d 836." Sloss, 279 B.R. at 15. The court held that, although the debtor's former spouse was the original and sole beneficiary of the life insurance policy, her status, after execution of a separation agreement, was that of a trustee holding the proceeds in trust for her children. In other words, she was no longer an original beneficiary. Id. at 16. According to the court, "[b]y virtue of that change, the children of Paul and Luzmila Sloss became the true primary beneficiaries of the Guardian Policies," although the records maintained by Guardian did not reflect that change. Id.

Thus, the court in Sloss looked beyond the policies themselves to determine the identity of the beneficiaries of the policy. It stated: "even if Guardian paid the death benefit of the policies to Luzmila Sloss without reservation, she would be required under the separation agreement to hold those proceeds in trust for her children, and would not be free to use the proceeds for her own benefit. Accordingly, Luzmila, as trustee, is not an original beneficiary of the Guardian Policies, and accordingly, the exemption afforded

10

by Mass. Gen. Laws ch. 175, § 125 is inapplicable as applied to Luzmilla." Sloss, 279 B.R. at 16.[5]  Thus, the court determined that the value of the policy was not exempt.

In In re Chevalier, 330 B.R. 21 (Bankr. D. Mass. 2005), the court considered whether the beneficiary of a life insurance policy, i.e., the debtor's eventual probate estate, had an insurable interest in the policy for purposes of § 125.  It stated:

> The availability of the exemption is also conditioned on the beneficiary having an insurable interest. Were both of those statutory conditions satisfied by the simple designation of the owner's probate estate as beneficiary, the owner of the policy could undermine the statute by retaining the exemption while changing the beneficiary with a simple alteration to his or her estate plan. The true beneficiary could change many times without affecting the exemption. Furthermore, the beneficiary of a probate estate need not have an insurable interest. In order to enjoy the protections of § 125, the beneficiaries of a policy must be originally specified, and the owner must be able to demonstrate their insurable interests. Because this can not be accomplished by a mere reference to a debtor's probate estate, the protection of § 125 is unavailable.

In re Chevalier, 330 B.R. at 25.  In sum, the court accepted the Chapter 7 trustee's argument that because the listed beneficiary on both policies was the insured's estate the policies were not in favor of another but in favor of the debtor, and the policy was not exempt.  In addition, the court observed:

> § 125 cannot be applied to policies where the insured "is not so connected with [the beneficiary] as to make the continuance of his life of some real interest to him." In re Caron, 305 B.R. 614, 616 (Bankr. D. Mass. 2004) (citing

---

[5] The court in In re Caron, 305 B.R. 614 (Bankr. D. Mass. 2004), determined that under Massachusetts law, the debtor's former husband, who was the original and current beneficiary of a whole life insurance policy, had an insurable interest in debtor's life at the time the policy was effected, as required to satisfy the "lawful beneficiary" requirements of the exemption statute, such that the cash surrender value of the policy was exempt.

> to Connecticut Mut. Life. Ins. Co. v. Schaefer, 94 U.S. 457, 460, 24 L.Ed. 251 (1876)). Rather, a beneficiary with an insurable interest must have "some reasonable expectation of pecuniary benefit or advantage from the continued life of [the insured]." Id. A wife is presumed to have an insurable interest in the life of her husband. Id. The insurable interest must have been present at the time the policy was effected, but need not continue to be present at the time of the bankruptcy filing. Caron, 305 B.R. at 616; Tyler v. Odd Fellows' Mut. Relief Assoc., 145 Mass. 134, 13 N.E. 360 (1887); Green v. Green, 13 Mass. App. Ct. 340, 433 N.E.2d 92 (1981). Here, the Trustee does not contest that, at the time the policy was effected, the Debtor was married to Douglas. Their subsequent divorce does not, therefore, obviate her insurable interest in the 32 Policy. . . .

In re Chevalier, 330 B.R. at 25–26 (footnote omitted).

    B. Analysis

Having reviewed the statute and the decisions discussed above, and recognizing that resolution of the issue presented is not straightforward, this Court concludes that bankruptcy courts look to substance rather than form to ascertain whether there are beneficiaries with insurable interests in insurance policies under Mass. Gen. Laws ch. 175, § 125 for the purpose of determining whether the cash surrender value of a policy is exempt from the claims of creditors of the insured. In other words, the beneficiary, whether an individual, a trust, or a probate estate, is subject to scrutiny to ascertain whether there it has an insurable interest. Thus, in CRS Steam, Judge Queenan considered whether nephews and nieces, the only existing beneficiaries of an intervivos trust that was named as the beneficiary of the policy at issue, had insurable interests, finding that they did not. Similarly, in Sloss, Judge Boroff examined the status of the named beneficiary, determining that a binding Separation Agreement pursuant to which the named beneficiary became a trustee for new beneficiaries, her children, meant that

the exemption was not available to the debtor. In Chevalier, the beneficiary was the debtor's "probate estate." The decision contained no elaboration of that estate's status. The court determined that "the mere designation of a probate estate as beneficiary disqualifies a policy from that statutory exemption," reasoning that the true beneficiary could change many times without affecting the exemption, thereby thwarting the requirement that the beneficiary must not change. 330 B.R. at 25.

In view of those decisions, the position espoused by the Trustee is unpersuasive. The decision in Chevalier is distinguishable because there is evidence that the beneficiaries of the Trust have insurable interests.

"[I]t is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 324 (1st Cir. 2008) (citing In re Friedman, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984), in which the court observed that "[i]t is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition.")). At the commencement of the instant case, the Trust was and always had been the beneficiary of the Second Guardian Policy. The Trust document sets forth the identity of the beneficiaries. The Trust was amended in October of 2004 to include a share for Warren A. Volk, although the other named Trust beneficiaries of the Children's Share and Family Share remained unchanged. Given that "[t]he overriding purpose of this statutory scheme is to protect the interests of life insurance beneficiaries from the creditors of the person who purchased or owns the policy," *see* In re Chung-I Liang, 474 B.R. 37, 40 (Bankr. D. Mass. 2012), the Court concludes that the Debtor has established that the beneficiary has not

13

changed and that the Trust document, which sets forth the identity of beneficiaries, namely, the Debtor's children and stepson, establishes that they have insurable interests.

> By the weight of authority, children have an insurable interest in the lives of their parents by virtue of their status alone. This insurable interest in the parent's life is not lost when the child reaches majority even though the child is not dependent upon the parent for support and has no direct pecuniary interest in the parent's life. Moreover, where one person stands toward another in loco parentis, each has an insurable interest in the other's life.

Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, 3 *Couch on Ins*. § 43:5.

The Court also concludes that the Trustee's emphasis on the revocability of the Trust is misplaced. The statute permits the exemption of the insurance proceeds "*whether or not the right to change the named beneficiary is reserved by or permitted to such person.*" Mass. Gen. Laws ch. 175 § 125. Accordingly, the Debtor's ability to revoke the Trust is not determinative as he had neither revoked the Trust nor changed the beneficiaries at the time he commenced his Chapter 7 case.

## V. CONCLUSION

Upon consideration of the foregoing, the Court shall enter a order overruling the Trustee's Objection to Amended Schedule C.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 9, 2017

14